

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2004

# Nerhati v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2462

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Nerhati v. Atty Gen USA" (2004). *2004 Decisions.* Paper 190.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/190

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-2462
_____

FERDINAND NERHATI,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES

Respondent

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A76-142-571)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 26, 2004

BEFORE: NYGAARD, AMBRO and VAN ANTWERPEN, Circuit Judges

(Filed: October 28, 2004)

_____

OPINION

_____

VAN ANTWERPEN, Circuit Judge

Ferdinand Nerhati ("Petitioner") petitions for review of the decision of the Board

of Immigration Appeals ("BIA"), which summarily affirmed the decision of the

Immigration Judge ("IJ"). The IJ denied Petitioner's application for asylum and for withholding of removal, finding that Petitioner's testimony was not credible and that he failed to show either past persecution or a well-founded fear of future persecution. The IJ also denied Petitioner's application for protection under the Convention Against Torture ("CAT"), finding that Petitioner failed to show that he will more likely than not be tortured if he returns to Albania. For the reasons set forth below, we deny the petition.

## I. FACTUAL AND PROCEDURAL HISTORY

Since we write only for the parties, we will set forth only the facts relevant to the issues. Petitioner is a native of Albania and a member of Albania's Democratic Party. According to his testimony, Petitioner has been active in the Democratic Party since 1991, but he has been less active in recent years. He served as the Secretary of the Party's local chapter from 1995 to 1997. Petitioner claims that he fled Albania and came to the United States after an incident where the police fired shots at him and his cousin because of their affiliation with the Democratic Party.

Petitioner claims that, on June 18, 1999,[1] he was driving with his cousin, Victor, from the city of Shkoder when they were stopped by the police. Victor was the Chairman of the Democratic Party in his village. Petitioner claims that the police approached his

---

[1]During an interview conducted by an Immigration Inspector at Newark International Airport when Mr. Nerhati arrived in the United States, Petitioner stated that this incident occurred on April 27, 1999. During his hearing before the Immigration Judge, Petitioner insisted that the events occurred on June 18th and that the Inspector incorrectly transcribed the date at the airport interview.

car wearing masks and that it was apparent that they intended to harm Petitioner. He then sped away in the car, and the police fired shots. According to Petitioner, a friend of his who worked at the police station had cautioned him three days earlier to be careful because his name and photo were posted at the station.[2]

Petitioner believes that the incident on June 18th was an attempt on his life because of his affiliation with the Democratic Party. He also testified that he made efforts to hide his wife and children after this incident and that he fled Albania on July 15, 1999. Petitioner arrived in the United States on July 17, 1999, and the INS[3] instituted removal proceedings on August 6, 1999. Petitioner claims that he will be killed by the government if he returns to Albania, and he filed a claim for asylum in September of 1999. He also requested that the IJ grant him withholding of removal under the Immigration and Nationality Act ("INA") and protection under the CAT.

The IJ issued its decision on January 21, 2000, denying Petitioner asylum relief, withholding of removal, and CAT protection. The BIA took appellate jurisdiction over the IJ decision pursuant to 8 C.F.R. § 1003.1(b)(3), (9). On April 21, 2003, the BIA summarily affirmed the IJ's decision. This Court has jurisdiction over the petition for

---

[2]Petitioner originally testified that this friend was his "cousin." However, his ultimate testimony was that this was a good friend and that the word "cousin" is used loosely to describe close friends as well as blood relations.

[3]We use the term "INS" to include both the former Immigration and Naturalization Service and its successor agencies, the Department of Homeland Security, the Bureau of Border Security, and the Bureau of Immigration and Customs Enforcement.

3

review pursuant to 8 U.S.C. § 1252(a)(1).

## II. STANDARD OF REVIEW

This Court's jurisdiction over final orders of removal is generally limited to review of BIA decisions. However, in cases such as this, where the BIA summarily affirms the IJ decision without an opinion, this Court reviews the IJ decision. Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003); Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002).

The scope of review is narrow. This Court applies substantial evidence review to findings of fact. Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001). We are thus bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B); see also Abdille, 242 F.3d at 483. In addition, this Court gives Chevron deference to the BIA's reasonable statutory interpretations. Abdulrahman v. Ashcroft, 330 F.3d 587, 591 (3d Cir. 2003); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). However, "deference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record, viewed as a whole." Balasubramanrim v. INS, 143 F.3d 157, 162 (3d Cir. 1998) (citation omitted).

## III. DISCUSSION

1.      Eligibility for Asylum and Withholding of Removal

The party seeking asylum has the burden of proving eligibility by establishing that he or she falls within the statutory meaning of "refugee." 8 C.F.R. § 208.13(a); Gao, 299

4

F.3d at 272; Abdille, 242 F.3d at 482 (citing Balasubramanrim, 143 F.3d at 161). Under the INA, an individual is a refugee if he cannot return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A). Thus, an applicant may establish eligibility for asylum by showing either past persecution or a well-founded fear of future persecution. 8 C.F.R. § 208.13(b). Whether an asylum applicant has established past persecution or a well-founded fear is a question of fact to be determined under the substantial evidence standard. Abdille, 242 F.3d at 483 (citing INS v. Elias-Zacarias, 502 U.S. 478 (1992)); Balasubramanrim, 143 F.3d at 161. Therefore, we will not disturb the IJ's decision that Petitioner failed to establish past persecution unless the evidence compels a contrary conclusion.

Petitioner's claim for asylum hinges on one incident of alleged past persecution based on his political opinion.[4] The IJ rejected this claim for two reasons. First, the IJ found that the testimony presented by Mr. Nerhati and his cousin lacked credibility. We address the credibility issue in detail below. Second, and more importantly, the IJ held that, even if Petitioner's account of the incident is accepted as credible, he still has not

_____

[4]Petitioner vaguely asserts in his brief that the IJ precluded consideration of other claims for relief at the start of the hearing by stating "[l]et's not get into, you know, what happened to your grandfather kind of stuff here under the communists. I'm going to cut that very short." A.R. at 81. However, during the hearing, Petitioner did not express any dissatisfaction with the IJ limiting the discussion of his grandfather. Moreover, there is no indication whatsoever in Petitioner's testimony that he left Albania and is afraid to return for any reason other than the June 18, 1999 incident.

5

given a sufficient basis for meeting his burden of proving eligibility for asylum. We agree with that finding and hold that the IJ's decision should be upheld based solely on the ground that Petitioner failed to meet his burden notwithstanding the credibility issue.

Asylum applicants must do more than establish that they experienced a traumatic incident; they must also show that the incident was "on account of," or because of, one of the statutorily protected grounds (i.e., race, religion, nationality, membership in a particular social group, or political opinion). Gao, 299 F.3d at 272 (citing Navas v. INS, 217 F.3d 646, 655 (9th Cir. 2000)). Even if we accept Petitioner's story, all it really tells us is that he is a Democrat and that police fired shots at his vehicle as he sped away from them. None of the evidence offered – other than Petitioner's speculation – indicates that the firing of shots was in any way related to his political party membership. The evidence does not reveal why the police stopped his car and whether they would have fired shots had he not tried to escape. Not even the warning given by Mr. Nerhati's friend at the police station provides a link between the incident and Petitioner's political affiliations. There was no testimony that Petitioner's picture was posted at the police station because of his political activities.

In addition, other evidence undercuts Petitioner's speculation that the police stopped his car with the intent to harm him based on his political opinion. First, the United States Department of State Country Profile for Albania states that the Albanian government and police lack the inclination and ability to target individual opponents of

6

the government. Moreover, Mr. Nerhati was a Democratic Party official for two years without incident and had significantly reduced his level of activity with the party by June of 1999. As Respondent's brief points out, while the incident on June 18th may have been unfortunate and traumatic for Petitioner, it does not fall within the definition of persecution entitling Petitioner to asylum relief under the INA. The IJ's finding that Petitioner has not met his burden of proving that he was persecuted *because of* race, religion, nationality, membership in a particular social group, or political opinion is thus not unsupported by substantial evidence, and we therefore uphold the IJ's decision denying asylum.

The standard for establishing eligibility for withholding of removal under the INA is similar to the asylum standard. The applicant must show that his life or freedom would be threatened in his home country because of the his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. 1231(b)(3)(A). The Supreme Court has held that the petitioner must establish that it is "more likely than not" that his life or freedom will be threatened. INS v. Stevic, 467 U.S. 407, 429-30 (1987). This standard is more strict than the asylum standard. Balasubramanrim, 143 F.3d at 165 (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 430-31 (1987)). Therefore, an applicant who fails to meet the requirements warranting asylum also fails to meet the standards for withholding of removal under the INA. Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003). Because Petitioner did not meet the requirements for asylum, we

7

also agree with the IJ that he is not eligible for withholding of removal.

2.      Eligibility for Protection Under the Convention Against Torture

To gain relief under the CAT, a petitioner must establish that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16 (c)(2).  As with asylum and withholding of removal under the INA, the petitioner has the burden of establishing eligibility for CAT protection.  Id.; see also Mulanga v. Ashcroft, 349 F.3d 123, 133 (3d Cir. 2003).  Again, Petitioner's claim for relief hinges on one incident where the police fired shots at his vehicle as he sped away from them.  Petitioner did not offer any evidence whatsoever that he has experienced torture or would be tortured if he returns to Albania, and Petitioner's brief fails to mention the CAT claim at all.  Therefore, we uphold the IJ's finding that Petitioner has failed to meet his burden of proving eligibility for CAT protection.

3.      The Immigration Judge's Adverse Credibility Determination

As noted, even if we disagree with the IJ's credibility determination, we would deny Mr. Nerhati's petition for review based solely on his failure to meet his burdens of proof.  However, the IJ's adverse credibility determination here merits some discussion. Administrative credibility determinations are reviewed by this Court as factual determinations and will be reviewed for substantial evidence.  Gao, 299 F.3d at 272 (citing Balasubramanrim, 143 F.3d at 161).  Therefore, we will "uphold the credibility

8

determination of the BIA or IJ unless 'any reasonable adjudicator would be compelled to conclude the contrary.'" Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

This Court has stated, however, that we will not uphold an IJ's conclusion that "is not based on a specific, cogent reason, but instead, is based on speculation, conjecture, or an otherwise unsupported opinion." Dia v. Ashcroft, 353 F.3d 228, 250 (3d Cir. 2003); see also Gao, 299 F.3d at 272. Moreover, "minor inconsistencies" that do not go to the heart of the claim for relief do not constitute sufficient evidence to support adverse credibility determinations. Gao, at Id. (citations omitted); see also Tarrawally, 338 F.3d at 187.

We agree with Petitioner that some of the "inconsistencies" on which the IJ based his adverse credibility determination may have been minor. For instance, the IJ made much of the petitioner's comment that Luc Preka, his friend who worked at the police station and allegedly warned Mr. Nerhati that the police were looking for him, was his "cousin." Petitioner explained that "cousin" is used in Albania to describe close friends as well as blood relations and that he had known Mr. Preka since childhood. The IJ refused to accept this explanation and gave no reason for disbelieving it. In addition, Petitioner points out that the IJ seems to have improperly speculated about what actually happened on June 18, 1999. The IJ stated that "they were probably fired at a vehicle [sic] because it was fleeing from a checkpoint at a police location and it would provide a very

9

plausible explanation as to why it was the police were somewhat upset...." A.R. at 47. While it is possible that this was the reason the police fired the shots, we are unable to discern how the IJ concluded that this was "probably" the reason the shots were fired.

As improper as these conclusions may have been, however, any perceived weakness in the IJ's credibility determination is eliminated by Petitioner's failure to meet his burdens of proof. As noted, even if the IJ found Petitioner's entire story credible, it would not be enough to establish a right to asylum, withholding of removal, or protection under the CAT.

For the foregoing reasons, we deny the petition.